# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN PROPERTY INSURANCE COMPANY | § § § § § § § § § § § § | |
| Plaintiff, | | |
| V. | | CIVIL ACTION NO. |
| NNF, INC. | | |
| Defendant. | | |

## PLAINTIFF'S COMPLAINT

NOW COMES AMERICAN PROPERTY INSURANCE COMPANY ("APIC") and files this its Complaint for Declaratory Judgment against NNF, INC. ("NNF"), and in support thereof would respectfully show unto the Court as follows:

## PARTIES

1.   Plaintiff APIC is a corporation that is organized under the laws of the State of New Jersey, with its principal place of business at 4 Industrial Way West, Eatontown, New Jersey 07724. For purposes of diversity, it is a corporate citizen of New Jersey.

2.   Defendant NNF is a Texas for-profit corporation with a registered address of 808 SW Green Oaks Blvd., Suite 400, Arlington, Texas 76017 and may be served with process through its registered agent MD SHAWKAT ALI at 2170 Kimbrough, Irving, Texas 75038. For purposes of diversity, it is a corporate citizen of Texas.

## JURISDICTION AND VENUE

3.   This Honorable Court possesses proper jurisdiction under 28 U.S.C. § 1332(a)(1) because complete diversity exists in that APIC and Defendant are citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

4.      This Honorable Court also possesses jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

5.      This Honorable Court also possesses jurisdiction pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a) to declare the rights of the parties in case of actual controversy.

6.      Pursuant to 28 U.S.C. § 1391(a)(1), venue is proper in the Northern District of Texas because the policy of insurance was issued to an insured, NNF, INC. and the properties at issue are within this District, specifically in Arlington, Texas.

### BACKGROUND FACTS

7.      This lawsuit results from a property insurance claim involving alleged hail damages that NNF submitted to their property insurer, APIC. The property involved is a commercial 808 SW Green Oaks Blvd., Arlington, Texas 76017 (the "Property").

8.      APIC issued property insurance Policy No. CPP-17001-J19-AG3, effective October 9, 2019 through October 9, 2020 for the Property, pursuant to the terms and conditions of the APIC policy (the "Policy").

9.      The Policy requires a Special Wind Deductible of $144,000.00.

10.     December 30, 2020, NNF's Public Adjuster Steve Toli of Raisman Catastrophe Claims Group, Inc., provided APIC with NNF's first notice of claim for an alleged loss due to a hail storm and damages to the roof of the Property occurring on April 27, 2020.

11.     APIC promptly assigned an adjuster and Claim No. 000200476 (the "Claim").

12.     NNF did not explain the eight (8) month delay in reporting the Claim.

13.     NNF executed an agreement with its public adjuster on December 8, 2020.

14. NNF did not explain the delay from engaging a public adjuster to reporting the Claim.

15. On January 4, 2021 and again on January 14, 2021, APIC inspected the loss and assessed the value of the damage due to the hailstorm on April 27, 2020.

16. On February 9, 2021, APIC provided its estimate of damages totaling $80.048.18 (less depreciation).

17. The estimated repairs were below the deductible of $144,000.00.

18. On February 11, 2021, NNF provided an estimate prepared by their public adjuster for the replacement of the entire roofing system in the amount of $1,608.203.65.

19. APIC requested additional documentation via telephone and email from the public adjuster and NNF's contractor on February 8, 2021, February 9, 2021, February 11, 2021, February 19, 2021, February 22, 2021, February 26, 2021, March 2, 2021, March 12, 2021, and April 2, 2021.

20. NNF did not provide further documentation to APIC.

21. NNF's contractor did not respond to requests from APIC's adjuster.

22. Instead, NNF invoked appraisal on April 21, 2021.

23. APIC and NNF did not reach agreement on coverage, scope, or value of damages.

24. NNF and APIC appointed their own appraisers.

25. APIC and NNF selected Preston (Tony) H. Rougas as the umpire for the appraisal.

26. NNF's appraiser, Tom A. Davis, prepared an appraisal estimate which included damages predating the date of the storm.

27. NNF's appraisal estimate included new damages not alleged in the claim for interior damages in the amount of $226,332.05.

28. NNF did not submit supplemental claims for interior damages.

29. No wind or hail-created opening to the roofing system to permit the seepage of water to the interior was reported by NNF or observed by APIC.

30. NNF's appraiser did not segregate damages which predate the Policy period from 1989 until October 9, 2019.

31. NNF's appraiser did not segregate claims which were not part of the claim for the hail storm on April 27, 2020.

32. The appraisal award stated, "Clarification, if Any: <u>Award does not address, prior payments, deductible, or coverage.</u>"

33. The umpire was not directed to address or make determinations regarding, "<u>prior payments, deductible, or coverage</u>" did not segregate the damages or make coverage determinations.

34. The umpire determined the actual cash value of the damages was $1,385.537.66.

35. APIC promptly remitted payment on the undisputed covered damages, pursuant to the umpire's Appraisal Award on April 8, 2022, including a reservation of rights.

36. NNF has demanded full payment of the Appraisal Award.

37. Upon information and belief, the Property still has its original roofing system from its year of construction, 1989.

38. Arlington Texas Permits does not demonstrate any permits issued for the Property.

39. Arlington Texas has suffered multiple hail and wind storms, tornados, severe convective storms, and other catastrophes from 1989 until October 9, 2019.

40. The Property suffered damages to its roofing system, air conditioners, skylights and other components prior to the Policy inception date of October 9, 2019.

41. Damages to NNF's roof are consistent with hail splatter from storms ranging from 1989 until 2019, prior to the Policy period.

42. Damages included in NNF's appraisal report includes damage from hail storms in 1995, according to the hail splatter size.

43. Upon information and belief, NNF performed work on the roof system relating to rooftop unit(s) and patches to the roof after April 27, 2020 and before July 2020, prior to reporting the Claim.

44. NNF did not disclose this repair and replacement of the rooftop unit or repairs to the roofing system after the April 27, 2020 storm.

45. NNF did not explain the failure to report the claim prior to December 30, 2020, if it had had the opportunity to inspect damage to the roof after April 27, 2020.

46. APIC has been prejudiced in the inability to inspect the alleged damages following the April 27, 2020 storm prior to NNF's work in the summer of 2020.

47. The Policy creates no obligation to remit payment for damages which predate the policy period from October 9, 2019 until the present date.

48. The Policy creates no obligation to remit payment for replacement of a roofing systems which may require replacement due to wear and tear, deterioration, and expiration of the expected lifespan of the original roofing system.

49. The Policy creates no obligation or authority for an appraiser or umpire to create coverage or award extra-contractual damages.

50. APIC asserts that the umpire did not segregate damages which predate the Policy.

51. APIC asserts that the umpire did not segregate damages which are unrelated to a covered loss, *e.g.* interior damages.

52. The Policy contains the following provisions of coverage:

**Coverage Period**

Policy Effective Date:   10/9/2019   at 12:01 AM Standard Time at your Insured
Policy Expiration Date: 10/9/2020   Company Address shown above.
…..

**Causes of Loss – Special Form**

**A. Covered Causes of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**. . . B. Exclusions**….

    **2.** We will not pay for loss or damage caused by or resulting from any of the following: **. . .**

    **d. (1)** Wear and tear;
        **(2)** Rust of other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

    **f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more. **. . .**

    **3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.**. . .**

**c.** Faulty, inadequate or defective:**. . .**
(2) Design, specifications, workmanships, repair, construction, renovation, remodeling, grading, compaction;
(3) Materials used in repair, construction, renovation or remodeling; or
(4) Maintenance;

of part or all of any property on or off the described premises…..

**TEXAS CHANGES….**

**C. Appraisal….**

If there is an appraisal:….

b. We will still retain our right to deny the claim…..

**LIMITATIONS ON COVERAGE FOR ROOF SURFACING....**

**B.** The following applies with respect to loss or damage by **wind and/or hail** to a building or structure identified in the Schedule as being subject to this Paragraph **B.**:

We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

## **CAUSES OF ACTION**

53. Each of the foregoing paragraphs is incorporated by reference.

54. APIC requests that the Court declare the rights of the parties with respect to the claim NNF has submitted under the APIC policy, which claim gives rise to a case of actual controversy.

55. Pursuant to 28 U.S.C. §2201(a), a party may seek the declaration of its rights with relation to a case of actual controversy. The Federal Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of final judgment or decree and shall be reviewable as such.

*28 U.S.C. §2201(a).*

56. APIC seeks a judgment declaring and determining the rights of the parties related to:

(1) additional liability APIC may bear, if any, and amount, if any, for the Claim for covered damages under the Policy, occurring between the dates of October 9, 2019 through October 9, 2020;

(2) that the appraisal process did not segregate damages predating the Policy;

{N1199696-1}

(3) that the appraisal process did not segregate damages after the hailstorm loss and/or not reported in the Claim (*e.g.* interior damages);

(4) that the appraisal does not create extra-contractual coverage;

(5) that the appraisal does not require APIC to pay for damages which are not covered under the Policy;

(6) whether NNF complied with its conditions under the Policy precedent to recovery;

(7) whether NNF failed to promptly report this loss;

(8) whether NNF has mitigated its loss; and

(9) whether any exclusions apply in the Policy to NNF's claimed damages.

57. All conditions precedent to the relief requested herein have occurred, been met, or have been performed.

## CONCLUSION AND REQUEST FOR RELIEF

58. APIC Insurance Company requests a judgment declaring its rights under the policy with respect to NNF'S claim, costs of Court, and all other relief that the Court deems appropriate.

**WHEREFORE,** APIC respectfully requests that the Court issue summons for Defendant NNF, Inc. to appear and answer, and that the Court declare the rights of the Parties as requested above. In addition, APIC respectfully requests that the Court award APIC its court costs and all other relief to which APIC is entitled.

By: *s/ Donald A. Waltz*
Donald A. Waltz
**KANE RUSSELL COLEMAN LOGAN, PC**
State Bar No. 24048061
901 Main Street, Suite 5200
Dallas, Texas 75202

Phone: 214.777.4200
Fax:    214.777.4299
Email: dwaltz@krcl.com
**ATTORNEYS FOR AMERICAN PROPERTY INSURANCE COMPANY**

{N1199696-1}